# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRIAN K. WOOD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-07-409-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Brian K. Wood requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on July 27, 1965, and was 40 years old at the time of the administrative hearing. He has a high school education plus vocational training as an auto mechanic and previously worked as a janitor and shipping and receiving clerk. He alleges he has been unable to work since March 25, 2003, because of degenerative disc disease of the lumbar spine with disc bulges at L3-4 and posterior disc bulges at L2-3 and L3-4.

## Procedural History

On April 27, 2004, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, which application was denied. ALJ Demos Kuchulis conducted a hearing on August 8, 2005, but ALJ Lantz McClain completed the decision and found that the claimant was not disabled on August 15, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that the claimant retained the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, that he could lift and/or carry ten pounds occasionally and five pounds frequently; stand and/or walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday (Tr. 14). The ALJ concluded that the claimant met Rule 201.28 of the

Medical-Vocational Guidelines and was not disabled because there were jobs existing in significant numbers in the national economy he could perform (Tr. 19).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence; (ii) by finding he had the RFC to perform substantial gainful activity; and (iii) by failing to properly evaluate his credibility. With regard to his first contention, the claimant argues that the ALJ failed to explain what weight he assigned to the opinion of the claimant's orthopedist Dr. J. Patrick Livingston, M.D. The Court finds that the ALJ *did* err by failing to properly analyze Dr. Livingston's opinion.

The record reveals that the claimant began seeing Dr. Livingston in May 2003 with complaints of back and hip pain caused by an on-the-job accident suffered in March 2003. Dr. Livingston examined the claimant and noted tenderness in the lumbar spine with "mild restricted mobility." X rays of the lumbar spine showed mild degenerative changes. Dr. Livingston assessed the claimant as temporarily totally disabled and recommended the claimant undergo an MRI (Tr. 147-48). The MRI showed only a minimal posterior disc bulge at L2-3 and L3-4 but was otherwise unremarkable (Tr. 146). The claimant returned in early June 2003, and Dr. Livingston referred the claimant for an epidural steroid injection (Tr. 145, 137-38). By mid-June, the claimant reported that the injection improved his condition and he was scheduled for another. He remained temporarily totally disabled (Tr. 143, 135-36). The claimant returned in July 2003 reporting "good days and bad days." He continued to suffer pain in the right thigh and left hip radiating into the left foot. He was

scheduled for another injection (Tr. 141, 133-34). By the end of July 2003, the claimant's condition had not worsened, and he thought he could live with it. Dr. Livingston concluded the claimant had reached maximum benefit and released him from care with restrictions against "repetitive bending, stooping, twisting, lifting more than 20 pounds, or prolonged sitting or standing without breaks." (Tr. 139). In April 2004, Dr. Livingston completed forms on the claimant's behalf for the Teacher's Retirement System of Oklahoma and indicated the claimant suffered from lumbar discogenic syndrome and rated his prognosis as "fair." Dr. Livingston assessed the claimant with permanent restrictions "against repetitive bending, stooping, twisting, lifting more than 20 pounds or prolonged sitting or standing without breaks." He noted that if the claimant "d[id] not follow his restrictions or if his condition worsen[ed], he could require lumbar surgery." (Tr. 176-77). Dr. Livingston later completed a physical medical source statement for the claimant covering the time period May 2003 to August 2005. He opined that the claimant could lift twenty pounds occasionally and frequently; stand and/or walk three hours in an eight-hour workday and continuously for forty-five minutes; sit four hours in an eight-hour workday and continuously for one hour; and pushing and pulling of hand or foot controls was limited. The claimant could never climb, stoop, kneel, crouch, or crawl; could occasionally balance and reach; and could frequently handle, finger, and feel. According to Dr. Livingston, the claimant's discogenic syndrome of the lumbar spine was the cause of his impairments (Tr. 203-04).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory

diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ discussed the medical source statement completed by Dr. Livingston and concluded the restrictions he imposed on the claimant should be "given less than controlling weight" because: (i) Dr Livingston treated the claimant for only a two-month period from May 2003 to July 2003; (ii) Dr. Livingston's opinions on the medical source statement were given over two years after he last saw the claimant; and, (iii) Dr. Livingston included less restrictive limitations on the form submitted to the Teacher's Retirement System in May 2004 than he did on the medical source statement in August 2005 (Tr. 16-17).

The ALJ's analysis of Dr. Livingston's opinion was deficient for a couple of reasons. First, the ALJ wholly failed to give the "controlling weight analysis" due the medical opinion of any treating physician such as Dr. Livingston, *i. e.*, the ALJ did not *first* consider whether Dr. Livingston's opinion was "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *Langley*, 373 F.3d at 1119, *quoting Watkins*, 350 F.3d at 1300. Instead, the ALJ jumped straight to the second stage of the analysis, application of the factors set forth in 20 C.F.R. § 404.1527, and thereby treated Dr. Livingston like a *non-treating* physician. Moreover, the ALJ failed even to conduct the second stage properly, *i. e.*, the ALJ considered only some (not all) of the factors set 20 C.F.R. § 404.1527, *e. g.*, he acknowledged that Dr. Livingston's specialty was orthopedics and discussed the length of his treatment relationship with the claimant. He did not mention and does not appear to have considered the other factors, as he was required to do. *See id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to

deference and must be weighed using *all* of the factors provided in [§] 404.1527.'") [emphasis added], *quoting Watkins*, 350 F.3d at 1300. *See also Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must . . . consider a series of specific factors in determining what weight to give any medical opinion.") [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites not law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").

Second, the ALJ did not specify the weight he assigned to Dr. Livingston's opinion, simply concluding that it was entitled to "less than controlling weight." Such a vague conclusion makes it impossible to determine exactly what weight the ALJ did assign, since "less than controlling weight" could apply to any medical opinion falling between "controlling weight" and "no weight at all." *See, e. g., Watkins*, 350 F.3d at 1300 (noting that it must be "clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and the reasons for that weight") [quotation omitted]. *See also Langley*, 373 F.3d at 1120-21 (finding that the ALJ erred by failing to evaluate what lesser weight a treating physician's opinion should be given). It might be inferred here that the ALJ meant "very little weight" or "no weight at all," but the Court is in no position to make such a

determination for the ALJ. *See Drapeau*, 255 F.3d at 1214 (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan,* 933 F.2d 598, 603 (7th Cir.1991). *See also Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") [citations omitted].

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis of Dr. Livingston's opinion. On remand, the ALJ should reconsider Dr. Livingston's opinion in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 30th day of March, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**